JUSTICE WEBER
dissents as follows:
Under differing facts, I could agree that it is appropriate to adopt the Shea rationale from the state of Washington. My particular problem here is that the findings of fact and conclusions of law of the Workers’ Compensation Court require that we affirm rather than remand for reconsideration.
I believe the following findings of fact and conclusions of law are necessary for consideration of the issues before us:
*106 FF #17: At trial claimant testified he did not specify his hernia as contributing to his disability because of the paperwork that would have entailed. The court then stated:
A preponderance of credible evidence persuades me that when claimant was laid off and he pursued social security disability benefits, he believed he was disabled solely on account of his heart condition. His hernia was not a factor in his decision to pursue benefits nor in his belief that he was unable to work. (Emphasis supplied.)
18. As of December 15, 1981, claimant considered himself unable to work and therefore retired ... he presented no evidence indicating that he ever made a subsequent effort to find employment of any sort and a review of claimant’s medical records concerning his heart condition provide convincing evidence that after December 15, 1981, claimant was in fact permanently totally disabled and unable to perform any sort of employment because of his heart condition. According to claimant, he was at one time considered a candidate for heart transplant. (Emphasis supplied.)
Paragraph 19 mentions the award of social security disability benefits and No. 20 how claimant had surgery for another aneurysm to replace a mitral valve.
21. In May 1982, some of the claimant’s left inguinal hernia symptoms reoccurred ... On June 17, 1982, a reoccurrence of the left inguinal hernia was diagnosed. However, claimant received no further treatment for his hernia symptoms until December 1984. (Emphasis supplied.)
22. The left inguinal hernia was surgically re-repaired in 1985, 1986 and, finally in 1987.
25. The claimant did not submit a claim for additional compensation benefits respecting his hernia until September 1992, almost 11 years after he returned to work.... In all his correspondence with Cigna, claimant never asked Cigna about compensation benefits ... claimant also never told Cigna that he was off work because of his hernia condition. (Emphasis supplied.)
26. However medical bills for claimant’s subsequent hernia repairs were submitted to Cigna and paid.
27. On account of his heart condition, as of December 15,1981, the claimant was no longer available for work in the open labor market. Thus, claimant’s total wage loss and loss of earning *107 capability was due to a prior, totally disabling condition and was not attributable to his hernia. (Emphasis supplied.)
28. Claimant has also failed to persuade the court that, absent his heart condition and termination of employment, his inguinal hernia would have recurred. Dr. Elmer Kobold, a surgeon who treated claimant for his hernias, testified that decreased physical activity and a weakening of muscles increases an individual’s susceptibility to developing hernias. When specifically asked about the increased susceptibility of “an individual who has recently stopped working and had been in a physically declining state because of that,” Dr. Kobold responded, ‘Yes. I am sure with his cardiac surgery he was severely physically limited for months, and that would give him more of a chance for muscle weakness and reoccurrence.” (Emphasis supplied.)
30. ... Cigna agreed to pay claimant 8 months of temporary total disability benefits. ...
31. Dr. Shaw gave claimant an impairment rating of 25% of the whole person based on the inguinal hernia. (Emphasis supplied.) CL #5.... Even if claimant is deemed not to have reached maximum healing following his initial hernia, he most certainly reached maximum healing within 3 months after his final surgery in 1987. While claimant continues to suffer pain in the left inguinal area, he has suffered no reoccurrence of a hernia. His condition has been static in the last 7 years. Dr. Shaw’s testimony that maximum healing should have been achieved within 3 months following that surgery was unrebutted. ... (Emphasis supplied.)
I conclude there is clearly substantial evidence to support the conclusion of the Workers’ Compensation Court that claimant here failed to prove total disability as a result of his hernia. Under that circumstance, there is no basis for a remand.
I therefore strongly disagree with the statement at the conclusion of the opinion that if the evidence shows that Larson’s inguinal hernia produced a permanent total disability, he is entitled to receive total disability benefits. He had that opportunity and failed to present such evidence. At most, he presented evidence unrebutted that he had an impairment rating of twenty-five percent of the whole person based on the inguinal hernia as determined by Dr. Shaw.
The important point here is that Larson did not meet his burden to present evidence that his hernia produced permanent total disability. It is not up to this Court to provide claimant a second chance to *108 do what he previously failed to do. The Workers’ Compensation Court correctly determined that claimant had not met his burden of proof.
I would affirm.
CHIEF JUSTICE TURNAGE concurs in the foregoing dissent.